UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

MOHD NAJIB BIN ABD RAZAK,

                     Petitioner

    - against -                            Docket No. 1:20-mc-00387 (JGK)(KHP)

TIMOTHY LEISSNER and THE
GOLDMAN SACHS GROUP, INC.,

                     Respondents.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

## MEMORANDUM OF LAW IN SUPPORT OF THE
## GOVERNMENT'S MOTION FOR LEAVE TO INTERVENE AND FOR A STAY

TABLE OF CONTENTS

TABLE OF AUTHORITIES ...........................................................................................................II

PRELIMINARY STATEMENT ....................................................................................................1

STATEMENT OF FACTS ............................................................................................................2

    I.      The 1MDB Scheme...................................................................................................2

    II.     1MDB-Related Civil and Criminal Cases.................................................................4

    III.    1MDB-Related Malaysian Criminal Cases...............................................................6

    IV.    The Section 1782 Matter ..........................................................................................7

ARGUMENT.................................................................................................................................8

    I.      INTERVENTION BY THE GOVERNMENT IS APPROPRIATE FOR THE
           PURPOSE OF SEEKING A STAY ........................................................................8

           A.      Applicable Law..............................................................................................9

           B.      Discussion ...................................................................................................10

    II.     A STAY OF DISCOVERY IN THE SECTION 1782 MATTER SHOULD BE
           GRANTED .............................................................................................................13

           A.      Applicable Law............................................................................................13

           B.      A Stay Will Protect the Public's Interest in the Integrity of U.S. Criminal
                   Proceedings and Prevent Unfair Prejudice to the Government .................14

           C.      A Stay Will Not Prejudice Petitioner Or Inconvenience the Court ..........25

CONCLUSION............................................................................................................................27

TABLE OF AUTHORITIES

**Cases**

█████████████████████████████████████████████████████

Berroyer v. United States, 282 F.R.D. 299 (E.D.N.Y. 2012) ....................................... 10

Bridgeport Harbour Place I, LLC v. Ganim, 269 F. Supp. 2d 6 (D. Conn. 2002)............ 11, 14, 24

Brock v. Tolkow, 109 F.R.D. 116 (E.D.N.Y. 1985).................................................... 26

Campbell v. Eastland, 307 F.2d 478 (5th Cir. 1962) .................................................. 15

Cascade Natural Gas Co. v. El Paso Natural Gas Co., 386 U.S. 129 (1967)........................... 9, 11

Founding Church of Scientology v. Kelley, 77 F.R.D. 378 (D.D.C. 1977) ................................ 15

In re Accent Delight International Ltd., 869 F.3d 121 (2d Cir. 2017).......................................... 9

In re Air Cargo Shipping Servs. Antitrust Litig., M.D.L. No. 1775, 06-MD-1775,
    2010 U.S. Dist. LEXIS 128950 (E.D.N.Y. Dec. 3, 2010) .......................................... 9

In re Grand Jury Proceedings, 995 F.2d 1013 (11th Cir. 1993).................................................... 25

In re Gulf Investment Corp., No. 19-mc-593 (VSB),
    2020 WL 7043502 (S.D.N.Y. Nov. 30, 2020).......................................................... 9

In re Hornbeam Corp., No. 14 Misc. 424 (Part 1),
    2015 WL 13647606 (S.D.N.Y. Sept. 17, 2015).......................................................... 9

In re Par Pharm, Inc. Sec. Litig., 133 F.R.D. 12, 13 (S.D.N.Y. 1990) ........................................ 15

In Re: Ex parte Petition of Ismael Reyes for an Order to Take Discovery Under 28 U.S.C.
    § 1782, No. 19 Civ 7219, 2019 WL 6170901 (S.D.N.Y. Nov. 20, 2019) ................................ 9

Louis Vuitton Malletier S.A. v. LY USA, Inc., 676 F.3d 83 (2d Cir. 2012) ........................ 13, 14

Mastercard Int'l, Inc. v. Visa Int'l Serv. Ass'n, 471 F.3d 377 (2d Cir. 2006).............................. 9

Miller v. Silbermann, 832 F. Supp. 663 (S.D.N.Y. 1993) ............................................ 10

Nakash v. U.S. Dep't of Justice, 708 F. Supp. 1354 (S.D.N.Y. 1988) ........................................ 15

Raphael v. Aetna Cas. & Sur., 744 F. Supp. 71 (S.D.N.Y. 1990) ................................ 15

Rosenthal v. Giuliani, No. 98 Civ. 8408 (SWK),
    2001 WL 121944 (S.D.N.Y. Feb. 9, 2001)................................................................ 15

SEC v. Blaszczak, No. 17-CV-3919 (AJN),
    2018 WL 301091 (S.D.N.Y. Jan. 3, 2018) ........................................................ 15, 17

SEC v. Carroll, No. 19 Civ. 7199 (AT),
    2020 WL 1272287 (S.D.N.Y. Mar. 17, 2020)................................................... 13, 15

SEC v. Chestman, 861 F.2d 49 (2d Cir. 1988) ....................................................... 11, 18

SEC v. Doody, 186 F. Supp. 2d 379 (S.D.N.Y. 2002) ................................................. 11

SEC v. Downe, No. 92 Civ. 4092 (PKL),
    1993 WL 22126 (S.D.N.Y. Jan. 26, 1993) .............................................................. 11

SEC v. Realty & Improvement Co., 310 U.S. 434 (1940)............................................. 11

Servotronics, Inc. v. Rolls-Royce PLC, 975 F.3d 689 (7th Cir. 2020).......................... 9

███████████████████████████████████████████████████

Twenty First Century Corp. v. LaBianca, 801 F. Supp. 1007 (E.D.N.Y. 1992).............. 11, 14, 25

United States of America v. "The Wolf of Wall Street", No. 16-cv-5362 (C.D. Cal.) ................. 4

United States Postal Service v. Brennan, 579 F.2d 188 (2d Cir. 1978)........................ 10

United States v. Eberhard, No. 03 Cr. 562 (RWS),
    2004 WL 616122 (S.D.N.Y. Mar. 30, 2004) ........................................................... 15

United States v. Goldman Sachs (Malaysia) Sdn. Bhd., 20-CR-438 (MKB)........................ 1, 4, 6

United States v. Low Taek Jho and Ng Chong Hwa, 18-CR-538 (MKB)........................... passim

United States v. Mellon Bank, 545 F.2d 869, 873 (3d Cir. 1976) ................................ 26

United States v. The Goldman Sachs Group, Inc., 20-CR-437 (MKB)................................ 1, 4, 6

<u>United States v. Tim Leissner</u>, 18-CR-439 (MKB) ........................................................... 1, 4, 5, 21

<u>Volmar Distribs. v. New York Post Co.</u>, 152 F.R.D. 36 (S.D.N.Y. 1993) .................................... 15

**Other Authorities**

In re Coronavirus/Covid-19 Pandemic, Admin. Ord. No. 2020-26-2 (E.D.N.Y. Jan. 14, 2021) ... 5

<u>Justice Manual</u>, § 9-27.760 ............................................................................................................. 6

**Federal Rules**

Fed. R. Civ. P. 24 ................................................................................................................. passim

PRELIMINARY STATEMENT

The government respectfully submits this memorandum of law in support of its motion to intervene in the above-captioned civil case (the "Section 1782 Matter") and to stay the proceedings in this case because of █████████████████████████████

████████████████████████████████████████████████████

the pendency of several closely-related criminal cases in the Eastern District of New York: United States v. Low Taek Jho and Ng Chong Hwa, 18-CR-538 (MKB) (the "Low/Ng Criminal Case"); United States v. The Goldman Sachs Group, Inc., 20-CR-437 (MKB) (the "Goldman Criminal Case"); United States v. Goldman Sachs (Malaysia) Sdn. Bhd., 20-CR-438 (MKB) (the "Goldman Malaysia Criminal Case"); and United States v. Tim Leissner, 18-CR-439 (MKB) (the "Leissner Criminal Case") (collectively, the "Criminal Cases").[1]  The same underlying facts are at issue in the Section 1782 Matter ████████████████████████████  and the Criminal Cases.

The government's intervention and a stay of proceedings are appropriate for several reasons, including: (1) the government's motion is timely; (2) the same facts and legal theories are at issue in both the Section 1782 Matter and the Criminal Cases; (3) the public has an interest in preventing the circumvention of restrictions on criminal discovery and prejudice to the prosecution of the Criminal Cases; and ███████████████████████

---

[1] The government has simultaneously filed a motion to seal ("Sealing Motion") in support of filing certain portions of this memorandum, as well as certain portions of the memorandum in support of the Sealing Motion, under seal and ex parte (the "Sensitive Information").  The Sensitive Information has been redacted from the versions of those memoranda that have been filed on the public docket, and unredacted versions of those memoranda have been provided to the Court.

[REDACTED] Accordingly, the government respectfully requests that the Court permit the government to intervene pursuant to Federal Rule of Civil Procedure 24, and order that civil proceedings in the Section 1782 Matter be stayed until the conclusion of the related Criminal Cases [REDACTED]. Because of the amount and nature of the information expected to become public during an upcoming trial in the Low/Ng Criminal Case, the government requests that the court enter a stay of the Section 1782 Matter until the conclusion of the Criminal Cases [REDACTED]

## STATEMENT OF FACTS

I.   The 1MDB Scheme

1Malaysia Development Berhad ("1MDB") was a Malaysian strategic investment and development company wholly owned and controlled by the government of Malaysia through its Ministry of Finance.   The International Petroleum Investment Company ("IPIC") was an Abu Dhabi sovereign wealth fund wholly owned by the Government of Abu Dhabi.  Between 2009 and 2014, The Goldman Sachs Group, Inc. ("Goldman Sachs") and its subsidiaries and affiliates, (collectively "Goldman"), through certain of its agents and employees, including Tim Leissner and Ng Chong Hwa, also known as Roger Ng ("Ng"), conspired with others, including Malaysian financier Low Taek Jho, also known as "Jho Low" ("Low"), to, among other things, corruptly provide payments and things of value to, or for the benefit of, foreign officials and their relatives in exchange for business advantages and to induce those foreign officials to influence

the decisions of their government offices and certain government instrumentalities, including 1MDB and IPIC to obtain and retain business for Goldman.

The business sought by Goldman included positions related to the issuance of three 1MDB bonds in 2012 and 2013 that raised $6.5 billion for 1MDB.  Leissner and Ng used Low's connections to high-ranking government officials in Malaysia and Abu Dhabi to obtain and retain these bond deals and other business for Goldman.  As part of the scheme, approximately $1.6077 billion was diverted from the proceeds of the three bonds to pay bribes to, or for the benefit of, foreign officials and their relatives.  More than one billion dollars in funds diverted from the bonds was also transferred to the co-conspirators and used for their personal benefit, including to purchase real and personal property in the United States and elsewhere.[2]

The charging documents in the Criminal Cases allege that at least five 1MDB officials, two Abu Dhabi officials and four Malaysian government officials in the executive branch of the Government of Malaysia and the Ministry of Finance, and their family members or associates, received money misappropriated by the co-conspirators from the 1MDB bond deals. The bribes to the foreign officials and their families and associates, and kickbacks to the co-conspirators were transferred through a complex web of banks and shell companies designed to conceal their source and the recipients, among other things.  (See Low/Ng Criminal Case, Dkt.

---

[2] Real and personal properties purchased by the co-conspirators are the subject of civil forfeiture actions by the government, as described infra.

Nos. 1, 55; Goldman Criminal Case, Dkt. No. 7; Goldman Malaysia Criminal Case, Dkt. No. 7;

Leissner Criminal Case, Dkt. Nos. 1, 16).

II.      1MDB-Related Civil and Criminal Cases



Beginning in July 2016 and continuing through 2020, the government filed more

than 30 civil forfeiture complaints alleging that funds raised by 1MDB pursuant to financing

instruments were diverted from 1MDB, used to pay bribes and kickbacks to conspirators and

government officials in Malaysia and Abu Dhabi, and used to purchase luxury assets for the

personal gratification of Low and co-conspirators.  (See, e.g., United States of America v. "The

Wolf of Wall Street", No. 16-cv-5362 (C.D. Cal.), Dkt. No. 1).  Nine of these civil forfeiture

cases are still ongoing, of which five are stayed until completion of the pending Criminal Cases.[3]

---

[3] The nine actions are: United States v. All Funds Held in Escrow by Clyde & Co., No. 2:20-cv-
8466 (C.D. Cal.); United States v Forty-Nine Movie Posters, No. 2:20-cv-8465 (C.D. Cal.);
United States v. Certain Rights to and Interests in Shares of Series D Preferred Stock in Palantir
Technologies, No. 2:17-cv-4446 (C.D. Cal.); United States v. Real Property Located in London,
United Kingdom Titled in the Name of Red Mountain Global, Ltd., No. 2:19-cv-1326 (C.D.
Cal.); United States v. Real Property Located in New York, New York, No. 2:17-cv-4444 (C.D.
Cal.); United States v. $37,564,565.25 in Account No. XXXXXXXX9515 at Morgan Stanley et
al., No. 1:18-cv-2795 (D.D.C.); United States v Real Property Located in Paris, France Titled in
the Name of Ave (Raphael) Paris SCI, No. 2:20-cv-5911 (C.D. Cal.); United States v. All Funds
on Deposit in Falcon Private Bank Limited Account Nos. '6001 and '1001, No. 2:20-cv-5914

On or about June 7, 2018, in the Eastern District of New York, the government charged Leissner, a former Goldman investment banker, with conspiracy to violate the Foreign Corrupt Practices Act ("FCPA") and money laundering conspiracy in relation to the bribery scheme described above involving, among other things, the three 1MDB bond deals.  (Leissner Criminal Case, Dkt. No. 1).  On or about August 28, 2018, Leissner pleaded guilty to one count of conspiracy to violate the FCPA and one count of conspiracy to commit money laundering; his sentence is pending.  (Leissner Criminal Case, Dkt. No. 16).

On or about October 3, 2018, a sealed indictment was filed in the Eastern District of New York against Low and Ng, charging them with conspiracy to violate the FCPA (anti-bribery provisions), conspiracy to violate the FCPA (circumvention of internal accounting controls) and money laundering conspiracy for the same bribery scheme.  (Low/Ng Criminal Case, Dkt. No. 1).  Ng was arrested in Malaysia on or about October 30, 2018, and was subsequently extradited to the United States; Low remains a fugitive.  The grand jury returned a superseding indictment against Low and Ng on or about December 9, 2020.  (Id., Dkt. No. 55).  Ng's trial was scheduled to start on March 8, 2021, but was recently postponed by the court sine die due to the current global health crisis, which has resulted in the closure of the courthouse in the Eastern District of New York through March 1, 2021.  See In re Coronavirus/Covid-19 Pandemic, Admin. Ord. No. 2020-26-2 (E.D.N.Y. Jan. 14, 2021).  The district court has advised

---

(C.D. Cal.); United States v. One Painting Entitled "Colored Campbell's Soup Can (Emerald Green), 1965" by Andy Warhol et al., No. 2:20-cv-5916 (C.D. Cal.).

that the trial is likely to be rescheduled to a date approximately four to five months after the

courthouse reopens.

On or about October 22, 2020, Goldman Sachs entered into a three-year deferred

prosecution agreement ("DPA") with the government for its role in the criminal FCPA scheme

related to 1MDB.  (Goldman Criminal Case, Dkt. No. 7).  A Goldman subsidiary, Goldman

Sachs (Malaysia) Sdn. Bhd., pleaded guilty to conspiracy to violate the FCPA in relation to the

same conduct, and is currently scheduled to be sentenced on March 3, 2021.  (Goldman Malaysia

Criminal Case, Dkt. No. 7).

All of the charging documents in the Criminal Cases refer to anonymized

individuals and entities, in compliance with the Department of Justice's policy not to identify

uncharged individuals and entities in charging documents.  See Justice Manual, § 9-27.760 (last

viewed Feb. 9, 2021).

III.     1MDB-Related Malaysian Criminal Cases

Petitioner Mohd Najib Bin Abd Razak, who is the former Prime Minister of

Malaysia ("Petitioner"), has been charged in two criminal actions in Malaysia related to the

1MDB criminal scheme.  On July 28, 2020, Petitioner was convicted in a Malaysia criminal

court of "charges of abuse of power, money laundering and breach of trust relating to different

actions in connection with 1MDB."  (Dkt. No. 1, at 8).  Petitioner is currently facing an ongoing

action charging an additional "twenty-one counts of money laundering and four counts of abuse

of position for gratification" for his role in the 1MDB criminal scheme (the "Malaysian

Proceeding").  (Id.).  The Malaysian Proceeding is ongoing, and Petitioner has reported that it is

expected to last until the end of 2021.  (Id.).

In addition to the charges against Petitioner, on or about December 17, 2018, Malaysian authorities filed criminal charges against several Goldman subsidiaries, Leissner, Ng and Low for their roles in the scheme to divert 1MDB funds derived from the Goldman-arranged bonds; other Goldman bankers were also subsequently charged.  (See, e.g., "AGC Files Criminal Charges Against Subsidiaries of Goldman Sachs and Employees," The Star (Dec. 17, 2018) (available at https://www.thestar.com.my/news/nation/2018/12/17/agc-files-criminal-charges-against-subsidiaries-of-goldman-sachs-and-employees/).  On or about September 4, 2020, the Malaysian government dismissed the charges against Goldman and many of its bankers as part of a $3.9 billion settlement agreement.  (Goldman Sachs Announcement on Agreement with Government of Malaysia (July 24, 2020), available at https://www.goldmansachs.com/media-relations/press-releases/current/announcement-24-july-2020.html)).

The charges against Leissner, Ng and Low remain pending.

IV.     The Section 1782 Matter

On or about November 17, 2020, Petitioner applied ex parte for an order pursuant to 28 U.S.C. § 1782 authorizing his attorneys to issue subpoenas, pursuant to Federal Rule of Civil Procedure 45, upon Respondents Goldman Sachs and Leissner (together, "Respondents"). (Dkt. No. 1).  These subpoenas sought both the production of documents and testimony from Respondents that Petitioner alleged would be used as part of his defense in the Malaysian Proceeding.  (Id.).  Among other things, Petitioner's subpoenas requested information concerning the criminal scheme detailed in the Criminal Cases, including communications between the Respondents, Petitioner and other individuals and entities involved in the scheme;

documents showing the flow of funds stolen in connection with the scheme; and documents

"sufficient to identify each of the individuals who are referenced in" the charging documents in

the Criminal Cases "but whose names have been anonymized."  (See Dkt. No. 1-9 (Subpoena to

Leissner, Requests for Production); Dkt. No. 1-8 (Subpoena to Goldman Sachs, Requests for

Production)).

        The Court granted the application in an order dated January 8, 2021 (Dkt. No. 9),

and Petitioner served subpoenas on Goldman on or about January 20, 2021.  On January 23,

2021, this Court granted Goldman's motion for an extension of time to respond to the subpoenas

until February 9, 2021.  (Dkt. No. 14).  On February 5, 2021, Petitioner filed a letter motion

advising the Court that Petitioner had not served subpoenas on Leissner because Petitioner was

unable to locate Leissner, and seeking permission to serve Leissner's counsel of record in the

Leissner Criminal Case.  (Dkt. No. 15).  On February 8, 2021, the Court granted Petitioner's

request.  (Dkt. No. 16).  On February 9, 2021, the government simultaneously filed this motion

and the Sealing Motion, which seeks to file the Sensitive Information in this Motion and the

Sealing Motion under seal and ex parte.

## ARGUMENT

I.      INTERVENTION BY THE GOVERNMENT IS APPROPRIATE FOR THE PURPOSE OF SEEKING A STAY

        The Federal Rules of Civil Procedure provide two bases for intervention:

intervention as of right pursuant to Rule 24(a) or permissive intervention pursuant to Rule 24(b).

As detailed below, the government's motion for intervention meets the standard for, and thus

succeeds under, both Rule 24(a) and Rule 24(b).

A.      <u>Applicable Law</u>

Courts routinely grant intervention by third parties in Section 1782 proceedings.

<u>See, e.g.</u>, <u>In re Accent Delight International Ltd.</u>, 869 F.3d 121, 126 (2d Cir. 2017); <u>Servotronics,</u>

<u>Inc. v. Rolls-Royce PLC</u>, 975 F.3d 689 (7th Cir. 2020); <u>In re Gulf Investment Corp.</u>, No. 19-mc-

593 (VSB), 2020 WL 7043502 (S.D.N.Y. Nov. 30, 2020); <u>In Re: Ex parte Petition of Ismael</u>

<u>Reyes for an Order to Take Discovery Under 28 U.S.C. § 1782</u>, No. 19 Civ. 7219, 2019 WL

6170901 (S.D.N.Y. Nov. 20, 2019); <u>In re Hornbeam Corp.</u>, No. 14 Misc. 424 (Part 1), 2015 WL

13647606 (S.D.N.Y. Sept. 17, 2015).  <u>See also</u> <u>In re Air Cargo Shipping Servs. Antitrust Litig.</u>,

M.D.L. No. 1775, 06-MD-1775, 2010 U.S. Dist. LEXIS 128950, at *58, 62-63 (E.D.N.Y. Dec.

3, 2010) (granting motion, noting that "[w]hether as of right under Rule 24(a) or by permission

under Rule 24(b), courts in the Second Circuit have routinely granted motions made by

prosecuting authorities seeking to intervene in civil actions for the purpose of obtaining stays of

discovery").

Rule 24(a) provides that a party may intervene as of right when the applicant:

claims an interest relating to the property or transaction that is the
subject of the action, and is so situated that disposing of the action
may as a practical matter impair or impede the movant's ability to
protect its interest, unless existing parties adequately represent that
interest.

Fed. R. Civ. P. 24(a).  Intervention is appropriate under Rule 24(a) if the application is timely,

the party has an interest in the transaction, the action may impede the party's ability to protect

that interest, and the party's interests are not adequately represented in the action.  <u>See</u>

<u>Mastercard Int'l, Inc. v. Visa Int'l Serv. Ass'n</u>, 471 F.3d 377, 389 (2d Cir. 2006); <u>Cascade</u>

<u>Natural Gas Co. v. El Paso Natural Gas Co.</u>, 386 U.S. 129, 132-36 (1967) (permitting State of

California to intervene under Rule 24(a) in antitrust case to protect state's "interest" in promoting competition in California).

Additionally, a court may permit intervention when an applicant files a timely motion and has a "claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(2). Intervention under Rule 24(b) is "wholly discretionary with the trial court." United States Postal Service v. Brennan, 579 F.2d 188, 191 (2d Cir. 1978). In exercising their discretion, courts consider the nature and extent of the intervener's interests, whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties, and whether the interests of the proposed intervener are adequately represented by the existing parties. See Berroyer v. United States, 282 F.R.D. 299, 302-03 (E.D.N.Y. 2012); Miller v. Silbermann, 832 F. Supp. 663, 673-74 (S.D.N.Y. 1993).

B.    Discussion

Intervention by the government is appropriate here under either prong of Rule 24. The government's motion is timely, as it is being filed before any discovery has taken place in the Section 1782 Matter. Additionally, no party has suffered prejudice. Most notably, as more fully discussed in Argument Section II infra, the government has a substantial interest in protecting the integrity of the Criminal Cases █████████████████████ ████████ as well as the public interest in law enforcement in the United States, and neither Petitioner nor Respondents adequately represents these interests.

When government prosecutors have advised courts that they are conducting criminal prosecutions or investigations of individuals involved in a pending civil action, the courts have regularly permitted the government to intervene to request a stay of proceedings or

discovery in the ongoing civil cases.  See, e.g., SEC v. Chestman, 861 F.2d 49, 50 (2d Cir. 1988)

(permitting government intervention to seek stay of civil discovery in SEC action pending

completion of a criminal investigation involving the same underlying facts was not an abuse of

discretion under either Rule 24(a) or Rule 24(b)); see also SEC v. Doody, 186 F. Supp. 2d 379,

381 (S.D.N.Y. 2002); Bridgeport Harbour Place I, LLC v. Ganim, 269 F. Supp. 2d 6, 8 (D.

Conn. 2002) ("Courts in this circuit have frequently allowed the government to intervene in a

civil case when there is a related criminal case pending, particularly when the intervention is for

the limited purpose of moving to stay the case." (citing Twenty First Century Corp. v. LaBianca,

801 F. Supp. 1007, 1009 (E.D.N.Y. 1992))); SEC v. Downe, No. 92 Civ. 4092 (PKL), 1993 WL

22126, at *11 (S.D.N.Y. Jan. 26, 1993).

Intervention is warranted as a matter of right under Rule 24(a)(2) in light of the

strong interest of the government and the public in the enforcement of criminal laws.  See, e.g.,

Cascade Natural Gas Co., 386 U.S. at 132-36 (permitting intervention as of right by the state in

antitrust proceedings because of public interest in effective competition); SEC v. Realty &

Improvement Co., 310 U.S. 434, 458-60 (1940) (holding SEC should have been permitted to

intervene in bankruptcy proceeding because resolution of that proceeding might "defeat the

public interests which [the SEC] was designated to represent").  That interest may be

substantially impaired if civil proceedings are allowed to continue in this matter before the

resolution of the Criminal Cases, ███████████████████████████████████ as

explained further in Argument Sections II.B and II.C below.  Indeed, at least some of the above-

mentioned ongoing civil forfeiture cases have been stayed until completion of the Criminal

Cases.

Intervention is also warranted as an exercise of this Court's discretionary authority under Rule 24(b) because the Malaysian prosecution of Petitioner is inextricably linked with ██████████████████████████████████████████ the Criminal Cases.  Indeed, there is substantial overlap in the core factual allegations underlying this action and the factual questions that likely will be resolved in the Criminal Cases, including whether Low, Ng and any uncharged co-conspirators in the Criminal Cases participated in the scheme to bribe foreign officials and launder funds diverted from 1MDB; which Goldman employees knew of the bribery and money laundering scheme related to the 1MDB bonds; whether and which foreign officials, including 1MDB officials and Malaysian government officials, knew of the scheme and requested or received bribes as part thereof; whether and what part Low played in the scheme; details of the transfer of funds from the proceeds of the 1MDB bonds to foreign officials and conspirators, including the laundering of such funds through shell companies and the participation of intermediaries and family members of both conspirators and bribe recipients in the scheme; and the identities of anonymized individuals and entities in the charging documents filed by the government in the Criminal Cases.  The government seeks only a stay of the proceedings, and its intervention will not alter the parties' respective positions.

Accordingly, this Court should permit the government to intervene to stay the case because ██████████████████████████████████████████ the Criminal Cases and the Section 1782 Matter share common questions of law and fact and the proposed intervention is timely.

II.     A STAY OF DISCOVERY IN THE SECTION 1782 MATTER SHOULD BE
        GRANTED

        The Section 1782 Matter should be stayed because the public has an interest in

preventing the circumvention of restrictions on criminal discovery and prejudice to the

prosecution of the Criminal Cases.



Moreover, such a stay will not prejudice

Petitioner or inconvenience the Court.

    A.      Applicable Law

        A district court has the inherent power to stay civil proceedings in the interests of

justice pending the completion of a parallel criminal trial.  SEC v. Carroll, No. 19 Civ. 7199

(AT), 2020 WL 1272287, at *2 (S.D.N.Y. Mar. 17, 2020) (quoting Louis Vuitton Malletier S.A.

v. LY USA, Inc., 676 F.3d 83, 96 (2d Cir. 2012) ("[T]he power to stay proceedings is incidental

to the power inherent in every court to control the disposition of the causes on its docket with

economy of time and effort for itself, for counsel, and for litigants.").  In evaluating whether to

stay a civil action in light of a criminal prosecution, courts in this circuit consider:

> (1) the private interest of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendant; (3) the convenience to the courts; (4) the interest of persons not parties to the civil litigation; and (5) the public interest.

Twenty First Century Corp., 801 F. Supp. at 1010 (citations and quotations omitted).  However, the Second Circuit has observed that such tests serve only as a "rough guide," and do not replace a district court's "studied judgment as to whether the civil action should be stayed based on the particular facts before it and the extent to which such a stay would work a hardship, inequity, or injustice to a party, the public or the court."  Louis Vuitton Malletier S.A., 676 F.3d at 99.

    B.    A Stay Will Protect the Public's Interest in the Integrity of U.S. Criminal Proceedings and Prevent Unfair Prejudice to the Government

        1.    Petitioner's Civil Proceeding Cannot Be Permitted to Circumvent Discovery Restrictions in the Criminal Cases

The Second Circuit has recognized that the government has "a discernible interest in intervening in order to prevent discovery in [a] civil case from being used to circumvent the more limited scope of discovery [available] in [a] criminal matter."  Chestman, 861 F.2d at 50. The vastly different rules that apply to discovery in civil and criminal cases are important reasons for staying civil proceedings and discovery in cases where there are parallel criminal proceedings.  See, e.g., Bridgeport Harbour Place I, LLC, 269 F. Supp. 2d at 10 ("Courts are very concerned about the differences in discovery afforded to parties in a civil case and those of a defendant in a criminal case").

"The overlap of issues in the criminal and civil proceedings is the threshold factor to be considered in determining whether a stay is needed." United States v. Eberhard, No. 03 Cr.

562 (RWS), 2004 WL 616122, at *5 (S.D.N.Y. Mar. 30, 2004) (collecting cases). "The strongest case for granting a stay is where a party under criminal indictment is required to defend a civil proceeding involving the same matter." Volmar Distribs. v. New York Post Co., 152 F.R.D. 36, 39 (S.D.N.Y. 1993); see, e.g., In re Par Pharm, Inc. Sec. Litig., 133 F.R.D. 12, 13 (S.D.N.Y. 1990) ("The weight of authority in this Circuit indicates that courts will stay a civil proceeding when the criminal investigation has ripened into an indictment.").

Discovery in criminal cases is narrowly circumscribed for important reasons entirely independent of any generalized policy of restricting the flow of information to defendants, and "[t]he public has an interest in ensuring the criminal discovery process is not subverted." Rosenthal v. Giuliani, No. 98 Civ. 8408(SWK), 2001 WL 121944, at *2 (S.D.N.Y. Feb. 9, 2001). Three major reasons regularly identified by the courts in justifying narrow criminal discovery are that: (1) "broad disclosure of the essentials of the prosecution's case may lead to perjury and manufactured evidence;" (2) "revelation of the identity of prospective witnesses may create the opportunity for intimidation;" and (3) "the criminal defendants may unfairly surprise the prosecution at trial with information developed through discovery, while the self-incrimination privilege would effectively block any attempts by the Government to discover relevant evidence from the defendants." SEC v. Carroll, No. 19 CIV. 7199 (AT), 2020 WL 1272287, at *5 (S.D.N.Y. Mar. 17, 2020) (quoting SEC v. Blaszczak, No. 17-CV-3919 (AJN), 2018 WL 301091, at *3 (S.D.N.Y. Jan. 3, 2018)); Nakash v. U.S. Dep't of Justice, 708 F. Supp. 1354, 1366 (S.D.N.Y. 1988); see also Campbell v. Eastland, 307 F.2d 478, 487 n.12 (5th Cir. 1962); Raphael v. Aetna Cas. & Sur., 744 F. Supp. 71, 75 (S.D.N.Y. 1990); Founding Church of Scientology v. Kelley, 77 F.R.D. 378, 381 (D.D.C. 1977).

Here, as detailed above, the factual and legal issues in the Section 1782 Matter and the Criminal Cases overlap to a remarkable degree.  Indeed, Petitioner's requests are defined entirely by the criminal scheme set out in the Criminal Cases.  Those cases remain pending, and include criminal charges against the Respondents, who pled guilty and have yet to be sentenced, and two other co-conspirators: Ng, who awaits trial and Low, a fugitive from justice.  Goldman Sachs was and Leissner is also criminally charged in Malaysia in relation to the same scheme.

Though not an indicted defendant in the Criminal Cases, Petitioner—who served as the Prime Minister of Malaysia during the foreign bribery and money laundering scheme set out in the Criminal Cases—places himself squarely within the events and activities underlying the Criminal Cases.  Petitioner now seeks information from the Respondents who face criminal charges related to the same scheme.  By virtue of both his prior position in the Malaysian Government and the nature of the scheme at the core of the Criminal Cases, allowing Petitioner to go forward with collection of discovery at this time raises the same specter of prejudice to the Criminal Cases as if he were a party to them.

Here, by seeking the requested information entirely outside of the Criminal Cases, Petitioner effectively skirts the discovery limitations imposed in every U.S. criminal proceeding that help ensure the integrity of its criminal proceedings.  For example, if discovery were to proceed in this matter, Petitioner would be allowed to learn the identities of any potential government witness in the Criminal Cases, compel the production of documents from them and depose them, all while the Criminal Cases remain pending.  At this stage, not even the charged defendants in the United States are entitled to know those witnesses' identities, and Petitioner's requests should not be an end run around these well-settled disclosure standards.  See Blaszczak,

2018 WL 301091, at *3 (staying civil proceedings and noting the stringent discovery standard set out in 18 U.S.C. § 3500: "[t]he discovery limitations in criminal proceedings include a prohibition on discovering statements of Government witnesses 'until said witness has testified on direct examination in the trial of the case.'").

Intruding further into the pending criminal proceedings, Petitioner also requests information from the Respondents designed to capture information the Respondents potentially obtained from the government itself, such as the identities of anonymized individuals and entities in the government's charging documents.  Given the breadth of Petitioner's requests, there is every likelihood that, if discovery were to go forward, Petitioner would seek additional such information, or seek discovery directly from the government, including copies of materials obtained by the government from other sources and reports of witness interviews, among other documents, which contain information about the Criminal Cases███████████████████

████████████████████  Not only would this impede the ongoing cases, the requests would drain the prosecutorial resources of the government when they are needed to conclude the Criminal Cases.

For these reasons, proceedings and discovery in the Section 1782 Matter should be stayed.

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████



18







21







C.      A Stay Will Not Prejudice Petitioner Or Inconvenience the Court

Finally, a stay of the Section 1782 Matter will neither prejudice Petitioner nor inconvenience the Court.  To the contrary, a stay will streamline discovery for Petitioner and narrow the issues that this Court will ultimately need to resolve.  As noted above, the trial of Ng in the Low/Ng Criminal Case had been scheduled for March 2021, and is expected to be rescheduled for the summer or fall of 2021 (depending on the status of the global health crisis).  As Petitioner has represented that the Malaysian Proceeding "is expected to last until the end of 2021" (Dkt. No. 1, at 8), the Ng trial will take place before the conclusion of the Malaysian Proceeding.  Since the information that Petitioner's subpoenas seeks is, in large part, the evidence underpinning the allegations in the superseding indictment in the Low/Ng Criminal Case and the other charging documents in the Criminal Cases (Dkt. No. 1 at 11-12), Petitioner will save significant resources by allowing the Criminal Cases to proceed unencumbered by the burdens of civil proceedings and discovery, as he will ultimately benefit from the evidence presented publicly in court in the Ng trial.  See Twenty First Century Corp., 801 F. Supp. at 1011 (noting that civil discovery due to pending criminal action "may streamline later civil discovery since the transcripts from the criminal case will be available to the civil parties.").  Thus, Petitioner will not be prejudiced by a stay of proceedings and discovery in the Section 1782 Matter.

For these same reasons, a stay of the Section 1782 Matter is also likely to narrow or eliminate factual issues in the civil litigation.  See, e.g., In re Grand Jury Proceedings, 995 F.2d 1013, 1018 n.11 (11th Cir. 1993) ("Although stays delay civil proceedings, they may prove useful as the criminal process may determine and narrow the remaining civil issues."); United States v.

Mellon Bank, 545 F.2d 869, 873 (3d Cir. 1976) (affirming a stay of discovery and stating: "[I]t might well have been that resolution of the criminal case would moot, clarify, or otherwise affect various contentions in the civil case."); Brock v. Tolkow, 109 F.R.D. 116, 119-20 (E.D.N.Y. 1985) (granting a stay and noting that "the resolution of the criminal case might reduce the scope of discovery in the civil case or otherwise simplify the issues.").  All of this will save the Court's time and resources when the civil proceedings stay is lifted at the conclusion of the criminal proceedings.

<u>CONCLUSION</u>

Permitting the government to complete its prosecution in the Criminal Cases serves the interests of the public, the government, the parties, and the Court.  Accordingly, all the considerations under Federal Rule of Civil Procedure 24 strongly weigh in favor of granting this motion to intervene and for a stay of discovery and proceedings in the Section 1782 Matter until completion of the Criminal Cases ███████████████ .

Dated:  New York, New York
       February 9, 2021

                  Respectfully submitted,

                  SETH D. DuCHARME
                  ACTING UNITED STATES ATTORNEY
                  Eastern District of New York
                  271 Cadman Plaza East
                  Brooklyn, New York 11201

        By:   /s/ Alixandra Smith
                  Alixandra Smith
                  Drew Rolle
                  Assistant United States Attorneys

DANIEL S. KAHN            DEBORAH L. CONNOR
Acting Chief, Fraud Section     Chief, Money Laundering & Asset Recovery Section
Criminal Division            Criminal Division
U.S. Department of Justice      U.S. Department of Justice

By:      /s/           By:      /s/
      Katherine Nielsen          Jennifer E. Ambuehl
      David Last              Nikhila Raj
      Trial Attorneys          Trial Attorneys